# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| HUNTER R. LEVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:17 CV 1236 RWS |
| | ) | |
| ST. LOUIS TEAMSTER BREWERY | ) | |
| WORKERS PENSION PLAN | ) | |
| and | ) | |
| ST. LOUIS TEAMSTER BREWERY | ) | |
| WORKERS PENSION PLAN | ) | |
| TRUSTEES, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Plaintiff Hunter Levi's claim against St. Louis Teamster Brewery Workers Pension Plan (Plan)[1] and the St. Louis Teamster Brewery Workers Pension Plan Trustees (Trustees) for additional pension benefits. Levi alleges that Defendants incorrectly determined his retirement benefits, resulting in diminished pension plan payments. Levi asserts his claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq*. Defendants have moved for summary judgment. Because Defendants did not

---

[1] The version of the pension plan at issue is the plan effective October 1, 1997, as amended through October 1, 2003 [Doc. # 34-1].

abuse their discretion in determining Levi's pension benefits, I will grant Defendants' motion.

*Background*[2]

Levi was a coal unloader at Anheuser-Busch (A-B) and a Local Union #367 member. Levi worked at A-B from January 8, 1979 until his last day of active work on February 14, 2003. On his last day of work his employment was suspended "with an intent to discharge" based on an altercation with his supervisor. Levi did not perform any work at A-B after his suspension. In a letter dated March 5, 2003, his suspension was formally converted into a discharge.[3] Levi's union challenged the discharge and the matter proceeded to arbitration. Levi claimed that his discharge was improper. However, on August l, 2003, the arbitrator issued a summary decision determining that Levi's discharge was for just cause. The discharge became final on August 6, 2003. Levi was 47 years old at time of his discharge.

---

[2] The background facts are taken from Defendants' uncontroverted material facts. [Doc. # 37] Levi failed to file a substantive response to Defendants' statement of uncontroverted facts as required by Fed.R.Civ.P. 56(c)(1) and Local Rule 7-401(E). Instead Levi's objected to some of Defendants' uncontroverted facts with immaterial matters or conclusory statements. As a result, Defendants' uncontroverted facts are deemed to be admitted. Northwest Bank & Tr. Co. v. First Illinois Nat'l. Bank, 354 F.3d 721, 725 (8th Cir. 2003).
[3] "Because of his insubordinate actions and unfounded accusations, Mr. Levi has been assessed repeated discipline, including two suspensions in 2002. Despite these efforts to impress upon him the requirement that he treat others in the workplace with respect, Mr. Levi has adamantly refused to change his behavior. As a result, he has become so uncooperative that he cannot be effectively or reasonably managed by anyone in supervision." [Doc. # 34-3, p.25] (letter from AB regarding basis for Levi's discharge, Id. at pp. 24–48).

On August 14, 2003, A-B issued a payment to Levi in the amount of $10,366.40 for accrued vacation and sick pay. No pension plan contributions for vacation and sick pay were deducted from this payment.

Eight years later, in 2011, Levi asked A-B's Retirement Plans department for information regarding his pension benefits under the Plan. The Plan is administered by a Joint Board of Trustees that has four employer representatives and four union representatives (the Trustees). The Plan responded with a letter dated May 12, 2011, providing Levi with several benefit estimates based on difference commencement dates. The letter noted Levi's termination date as March 4, 2003, and February 28, 2003 as the "Credited Service" and "Date of Last [Pension] Contribution." The February 28, 2003 date reflected the last month in which Levi performed any work for A-B. The estimates calculated Levi's credited service as 24 years and 2 months based on the fact that Levi did not perform any work after February 2003. The Plan had determined that Levi's pension qualified as a "deferred vested pension" with a multiplier of $79.95, resulting in a pension of $1,012.79 per month.

Levi sent the Plan letters dated June 3, 2011 and September 23, 2011 raising several objections to the calculation of his estimated benefits. Levi also sent an application for pension benefits, dated September 12, 2011, which requested a benefits commencement date of December 1, 2011. The Plan responded on

3

October 14, 2011 that his request for a higher multiplier and enhanced early retirement pension benefits were denied.

On October 28, 2011, Levi filed an appeal to the Trustees asserting three issues: that the multiplier applicable to his pension used an incorrect date as its basis, that he qualified for an early retirement modifier, and that his discharge was illegal and thus his pension should have been calculated as though he was an employee until he elected to retire in 2011. On May 17, 2012 the Trustees denied Levi's pension appeal on all three grounds. Based on the last day that Levi had performed pensionable hours of active work at A-B (February 14, 2003) the Trustees determined that per the terms of the pension plan, Levi's Benefit Determination Date was February 28, 2003 (the last day of the month in which the last day of his employment fell). The Trustees determined that the payment issued to Levi on August 14, 2003 for accrued vacation and sick pay did not apply to the determination of this date. A-B does not include hours credited for accrued vacation and sick pay paid after an employee's termination of employment as pensionable hours for which it makes pension contributions to the Plan. The Trustees concluded that February 2003 was the final month for which contributions were made to Levi's pension plan on his behalf, as a result, he is only entitled to the multiplier in effect at the end of February 2003.

Levi challenges Defendants' calculation of his benefits. Defendants have moved for summary judgment.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

The denial of benefits under an ERISA plan is reviewed under an abuse of discretion standard when the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under that standard a claim fiduciary's decision will be upheld as long as it is reasonable and supported by substantial evidence. Cooper v. Metro. Life Ins. Co., 862 F.3d 654, 660 (8th Cir. 2017). A decision is deemed to be reasonable if a reasonable person could have reached a similar decision despite the fact that the person could also have reached a different decision. Id.

In reviewing a plan fiduciary's decision, a court should consider whether the fiduciary's interpretation: 1) is consistent with the goals of the plan; 2) renders any language of the plan meaningless or internally inconsistent; 3) conflicts with the substantive or procedural rights granted by ERISA; 4) interprets words at issue consistently; and 5) is contrary to the clear language of the plan. Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).

*Discussion*

In the present lawsuit Levi alleges that Defendants erred in the calculation of his pension benefits. He asserts that his multiplier should have been calculated using the multiplier in effect on March 1, 2003 (not the February 2003 multiplier) because he was actually terminated on March 5, 2003. The March 2003 multiplier

6

would have resulted in a higher monthly benefit. In addition he argues that he should be credited with an additional six months of service because he received his final payment from A-B for accrued vacation and sick pay on August 14, 2003. Levi alternatively claims that he did not actually retire from A-B until December 1, 2011 when he elected to, and began, receiving his pension benefits. As a result, he asserts that he should be credited with 32 years and 11 months of service instead of the 24 years and 2 months calculated by the Plan. Levi's arguments are based on his interpretation of the Plan documents.

The Plan determined that, under Section 4.01 of the Plan, Levi's pension multiplier was based on his Benefit Determination Date (BDD). That date, in turn, is defined in Section 1.04 of the Plan as "the last day of the final month in which contributions are due to the Plan on behalf of the participant pursuant to Section 11.01 of the Plan." Section 11.01 of the Plan provided that A-B must make contributions to the Plan "for each compensated day for which compensation is payable to an eligible employee." The Plan determined that Levi's BDD was February 28, 2003. It reached that conclusion because the last date A-B was required to make contributions to the Plan was Levi's last day of compensable work, February 14, 2003. The fact that Levi was ultimately terminated on March 5, 2003 was not a factor in calculating his BDD.

The Plan also determined that Levi's receipt of a payment in August 2003 for his past accrued vacation and sick pay benefits did not influence the determination of his BDD.

On October 28, 2011, Levi appealed the Plan's calculation of his benefits to the Trustees. The Trustees affirmed the Plan's decision on Levi's BDD and multiplier. Levi also argued that the August payment should be used to calculate his BDD. The Trustees unanimously rejected that contention and denied Levi's appeal in a letter dated May 17, 2012. They determined that neither the collective bargaining agreement nor the Plan required A-B to pay pension contributions from such payments. Nor had such contributions ever been withheld for a payment of accrued benefits to a terminated employee. As a result, the Trustees concluded that the payment made to Levi in August 2003 was properly excluded from the calculation of his BDD.

The Trustees also rejected Levi's contention that he was entitled to count the time between the termination of his employment in 2003 to his election of pension benefits in 2011 towards his years of service. They determined that his years of service ended on February 28, 2003, the end of the month in which Levi last worked.

It is undisputed that the Trustees had discretionary authority to determine eligibility for and the amount of benefits, and to construe the terms of the Plan

under Section 13.02 of the Pension Plan. [Doc. #34-1, Pension Plan, p.77] Moreover, the Trustees' determination of Levi's pension benefits was reasonable and supported by substantial evidence. The Trustees' determination was consistent with the goals of the plan; did not render any language of the plan meaningless or internally inconsistent; did not conflict with the substantive or procedural rights granted by ERISA; interpreted words at issue consistently; and was not contrary to the clear language of the plan. Although Levi offers his alternative interpretation of the Plan in calculating his benefits, the Trustees' determination is reasonable and entitled to deference upon judicial review.

As a result, Defendants are entitled to summary judgement.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants St. Louis Teamster Brewery Workers Pension Plan and the St. Louis Teamster Brewery Workers Pension Plan Trustee's motion for summary judgment [35] is **GRANTED**.

**IT IS FURTHER ORDERED that** all other pending *motions are DENIED as moot.*

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2018.